**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ollie Marie Phinizy, | No. CV-18-00371-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ollie Marie Phinizy brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises four issues on appeal: 1) does substantial evidence support the Administrative Law Judge's ("ALJ") finding that one of Plaintiff's past jobs was performed at the sedentary level; 2) did the ALJ provide clear and convincing reasons for rejecting the opinions of treating physician Dr. Major about Plaintiff's abilities to handle and finger; 3) did the ALJ give clear and convincing reasons for rejecting Dr. Major's opinions that Plaintiff could stand 3 hours total and walk 3 hours total per workday; and 4) did the ALJ give clear and convincing reasons for rejecting Dr. Major's opinions that Plaintiff could not perform sustained full-time work. (Doc. 14).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 14, 15, & 16). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the

Court finds that this matter should be remanded for further administrative proceedings.

## I. Procedural History

Plaintiff filed an application for social security disability benefits on February 12, 2015. (Administrative Record ("AR") 94). Plaintiff alleged disability beginning on February 1, 2011 based on exercise induced asthma, chronic obstructive bronchitis, allergic rhinitis, COPD with emphysema, osteoarthritis of spine, knees, and hands, lumbosacral neuritis, osteoporosis, lung densities on x-ray, and pain in back, knees, and hands. (AR 94).[1] Plaintiff's application was denied upon initial review (AR 93) and on reconsideration (AR 106). A hearing was held on June 19, 2017 (AR 56), after which ALJ Yasmin Elias found, at Step Four, that Plaintiff was not disabled because she could perform her past relevant work as generally performed. (AR 24). On June 20, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2017. (AR 14). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her amended AOD of October 12, 2013 and her DLI of December 31, 2017.

## II. Factual History[2]

Plaintiff was born on August 3, 1957, making her 56 years old at the amended AOD of her disability. (AR 94). She completed two years of college and is a licensed practical nurse. (AR 222). In the past 15 years she has worked as a transitional care coordinator, public relations director, senior provider contractor, claim auditor, and in sales at a home décor store. (AR 232).

### A. Treating Physicians

#### i. Dr. Major

Plaintiff's primary care physician is Dr. James Major.

On May 24, 2013 Plaintiff was managing her lumbar neuritis without needing to use

---

[1] At the hearing before the ALJ, Plaintiff amended her AOD to October 12, 2013, the date that she stopped working. (AR 61).

[2] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

Tramadol since adding glucosamine, and had no recent exacerbations of radiculitis. (AR 412).

On January 7, 2015 they discussed Plaintiff's chronic pain; her husband said it was much more severe than she was willing to treat because she did not like to take medication. (AR 364). Plaintiff did not have a lot of time for self-care due to caring for her husband, who was slowly improving after cancer. Plaintiff had progressive pain and limitation of activities with her bilateral thumbs, limiting her hobby of painting. (AR 366). Dr. Major noted she had become fairly severely disabled and could no longer perform her job because of chronic pain, and that counseling might be worthwhile regarding her resistance to medications.

On April 2, 2015 Plaintiff had researched osteoporosis drugs but did not want to take any due to side effects; she then decided she wanted to get authorization for Forteo. (AR 359). Her pulmonary consult noted she was stable for 1 year, but she still had episodes where she was so out of breath, she felt like she was going to pass out. Her lumbar radiculopathy and discogenic low back pain were stable and she generally used one Tramadol a day, rarely two.

On August 4, 2015 Plaintiff was seen after a tree fell on her back; x-rays showed a fracture at T4. (AR 354). Prior to this she was doing well with her chronic pain, using one or two Tramadol most days. Plaintiff had increased activity except for avoiding lifting, horseback riding, or similar activity that might cause further injury. Dr. Major also noted they attempted to get insurance authorization for two osteoporosis medications that were refused. On exam Plaintiff had normal range of motion and strength and no tenderness in the T4 area. (AR 355).

On February 16, 2017 her active problems were asthma with COPD, benign hypertension, chronic knee pain, depression with anxiety, generalized osteoarthritis of multiple sites, hyperlipidemia, myofascial pain, osteopenia, and pulmonary emphysema. (AR 42–43). Her medications were ProAir HFA, Alprazolam, Lisinopril, Dulera, Tramadol, Bupropion, Methocarbamol, and Montelukast sodium. (AR 42). Plaintiff spent

a lot of time living in the White Mountains, which made access for medical evaluation intermittent. (AR 43).

On March 20, 2017 Plaintiff complained of chronic pain in both knees, usually only lasts a few seconds then resolves, and limits the degree of exercise at times but not enough that Plaintiff would consider x-rays, PT evaluation, or sports orthopedic referral. (AR 470). No medication or further treatment was indicated. (AR 471). Plaintiff's cough had improved and she felt she was doing well overall.

On May 19, 2017 Dr. Major completed a Medical Work Tolerance Recommendations form. (AR 473). He opined that Plaintiff could do part-time sedentary work, up to 6 hours a day; could stand for 60 minutes at a time, 3 hours total; could sit for 3 hours at a time, 6 hours total; walk for 90 minutes at a time, 3 hours total; would need to change positions frequently from sitting to standing or walking; could not use her feet for frequent movements because of exacerbation of back pain; could climb 6 flights of stairs but not ladders; and would be expected to miss 4 or more days of work per month due to disability and appointments. (AR 473). Dr. Major further opined that Plaintiff could never kneel; occasionally bend, crouch, squat, and work with her arms extended in front of her; and frequently sit in a clerical position and reach above shoulder. (AR 474). She should avoid power gripping, pushing, and pulling, and pinching with the thumb and index finger; could occasionally do fine movements like typing and small assembly; and occasionally to frequently feel and touch where sensation is required. She should avoid environmental hazards such as temperature extremes, fumes, smoke, unprotected heights, and moving machinery. Dr. Major opined that Plaintiff could work 6 hours per day, 4 days per week with these restrictions, but only for limited function due to lower back pain and degenerative disc disease, emphysema, arthritis in her hands, and knee problems. He indicated her limitations would last at least one year but were likely permanent.

On June 15, 2017 Dr. Major wrote a letter addendum. (AR 479). He stated that:

> The patient has chronic discogenic low back pain with radiculitis, which has been disabling since 2013. Furthermore, she suffered a thoracic spine compression fracture in August 2015 which has compromised her ability to function or to

receive significant relief from the use of medications. As I noted 1/07/2015, tramadol was really not sufficient to control pain and allow ADLs beyond caregiving for her husband.

Her COPD/emphysema is further complicated by chronic pulmonary emphysema and chronic interstitial disease (scarring plus pulmonary nodules); the patient also has a component of exercise-induced bronchospasm which is not prevented by preexercise use of albuterol; ability to exercise was limited to at most one flight of stairs.

NOTE: The patient continues to have episodes where she becomes progressively out of breath where she feels that "I'm trying so hard to breathe that I feel like I'm going to pass out." These may to some extent reflect hyperventilation associated with stress, but stress management also is difficult. . . .

Her limitation due to bilateral severe thumb MCP destructive arthritis, limits activities even at a low threshold because of pain and weakness from "overuse". This has progressed further since comments made in January 2015.

Stress and chronic depression, along with chronic pain, had made it difficult for the patient to focus and complete tasks; despite medication, this has not improved significantly to perform a job/employment that would require close attention or focus on job duties. This focus would be further interfered with due to the patient's chronic pain and necessity to get up and move around, limitation of stay in one place or sitting/walking for an extended period.

The patient also has very severe osteoporosis which increases her risk for significant fractures . . .

She has continued to have chronic pain, requires opiate management, has limited ability to tolerate most activities as described above, and has limitation in cognition resulting from her medications and from chronic depression and stress.

(AR 479–480).

    ii.   Dr. Chacko

Plaintiff was treated by Dr. Jacob Chacko at the Catalina Chest Clinic. On February 3, 2012 Plaintiff had a 20-year history of emphysema and shortness of breath, progressively getting worse, occasional wheezing, environmental allergies, and shortness of breath with moderate activity. (AR 436). Plaintiff did not think she could climb a flight of stairs but had no problems with ADL. The assessment was asthmatic bronchitis and the plan was to continue current medications and add Singulair. (AR 438). On April 3, 2012 her symptoms

were stable. (AR 440).

On February 24, 2015 Dr. Chacko noted he had not seen Plaintiff in 2 ½ years because she was caring for her husband with cancer. (AR 432). Plaintiff had worsening asthma over the past 6 months, mainly exercise-induced, with more wheezing and shortness of breath. (AR 432). On April 3, 2015 she had a follow-up and was doing better; the assessment was asthma. (AR 427–430). On August 5, 2015 the plan was to continue on her current medications; the assessment was COPD and lung nodules. (AR 424).

### iii. Additional Treating Physicians

Plaintiff saw Dr. David Jacobs on March 7, 2011 for a 30-year history of back pain, worse in the last year. (AR 330). He assessed myofascial pain, degenerative spondylosis, osteopenia, and SI dysfunction, and noted that she didn't qualify yet for fibromyalgia but that incipient fibromyalgia was a possibility.

A pulmonary function test on November 17, 2011 showed moderate to severe obstructive lung disease with good bronchodilator response. (AR 338).

A CT of the chest on February 29, 2012 showed bilateral centrilobular emphysema with tiny bilateral noncalcified pulmonary nodules. (AR 339).

A bone density scan on April 15, 2014 showed osteoporosis; Plaintiff was at high risk for fracture and needed more aggressive treatment. (AR 405, 408).

A CT of the chest on December 29, 2014 showed no significant change in the lung nodules from the last scan two years prior. (AR 334).

On March 3, 2015 Plaintiff saw Dr. Siegel for bilateral thumb pain, worse on the right. (AR 346). Plaintiff reported pain in wrists, numbness in hands, and loss of strength and dexterity. Ibuprofen and carpal tunnel braces had some benefit but not complete resolution of symptoms. The impression was osteoarthritis of the CMC joints and STT joints, and Dr. Siegel suggested she change to a soft neoprene thumb brace.

A CT of the cervical spine on July 24, 2015 showed disc height loss consistent with disc degeneration, spondylosis, no acute cervical spine fracture, COPD, and nonspecific hazy biapical lung opacities consistent with atelectasis or infiltrates. (AR 458). A CT of

the thoracic spine showed acute T4 vertebral body compression fracture, mild multilevel disc degeneration, and hazy opacities within the dependent aspect of each lung favoring atelectasis over infiltrate. (AR 459). A follow-up CT of the thoracic spine on August 18, 2015 showed stable mild compression fracture of the T4 vertebral body, no new compression fracture, and mild degenerative changes throughout the thoracic spine. (AR 466).

Plaintiff saw Dr. Maltry on May 16, 2017 for a 1-year history of occasional pain and swelling in her left knee; she also reported an unstable left ankle. (AR 477). X-rays showed 75% thinning of the lateral joint space and modest irregularity patellofemoral joint space. The impression was early osteoarthritis of the left knee and Plaintiff received an injection.

Plaintiff saw Dr. Siegel on May 18, 2017 for pain in her hands, thumbs, and IP joints of her fingers. (AR 476). On exam she had moderate to severe IP joint arthritis in both hands, but could still make a near complete composite fist and extend the fingers fully; she also had CMC arthritis. Dr. Siegel recommended a hand therapy program to improve function, dexterity, and strength.

Plaintiff was seen at Alvernon Allergy & Asthma on December 11, 2017. (AR 49). Her diagnoses were COPD, emphysema, severe persistent asthma, and allergic rhinitis.

Plaintiff saw Dr. Mark Rose in 2017 and 2018 for treatment of severe persistent asthma and allergic rhinitis. (AR 31–41).

Plaintiff saw Dr. Todd Locher for a follow-up for mixed central and obstructive sleep apnea on February 16, 2018 and was doing well with her CPAP machine. (AR 47).

B.    State Agency Physicians

At the initial disability determination level, Dr. Christopher Maloney opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand/walk and sit 6 hours in an 8-hour workday. (AR 101). He noted that Plaintiff's pulmonary conditions were stable under prescribed medication and that her arthritis was being treated with medication. (AR 102).

On reconsideration, Dr. Jerry Dodson modified the light RFC to add a manipulative limitation to frequent bilateral handling and fingering, and avoid constant usage and gripping, based on Plaintiff's arthritis. (AR 115).

C.    Plaintiff's Testimony

On an Exertional Daily Activities form dated April 15, 2015, Plaintiff reported that she does daily household chores, prepares meals, laundry, and light yard work. (AR 228). She moves slowly, gets out of breath in less than a minute if she starts to move fast, needs to take breaks, and can only go for 3–4 hours at a slow pace. She can walk up to 2 miles in 1 hour and 15 minutes if she goes slow but more likely will do 1 mile in 40–45 minutes. She can probably lift up to 20 pounds but sometimes even a coffee cup is unbearable with her wrists. (AR 229). She can clean for 3–4 hours then stops due to pain and fatigue and cannot clean the house in one day. Plaintiff helps her husband with trimming and picking up the yard and can use a hula hoe for 45 minutes. She takes 2–4 rest periods of 30 minutes or longer a day.

At the hearing before the ALJ, Plaintiff testified that she stopped working mostly due to shortness of breath. (AR 63). She was working at TMC discharging patients and by the time she would walk to where she needed to go, she was out of breath and the patients were concerned for her. It was very embarrassing for her so she quit. If she could do it fairly slowly she would be ok, but she was typically in a hurry. (AR 64). Plaintiff stated she's had breathing difficulties her whole life and just tried to deal with it, but in 2010 her symptoms started getting drastically worse. (AR 64–65).

Dr. Major has been her primary care physician for 11 years. (AR 65). She has respiratory problems with her lungs, arthritis in her thoracic spine and both thumbs, and osteoporosis, and fractured her thoracic spine in 2015. (AR 65). She has had back pain since her late 20s but it's progressively gotten worse. (AR 66). Her pain level is affected by what she does so she tries not to do anything that causes pain, but when she raises her elbows to a certain height it immediately pinches and then if she continues to do that the pain gets worse and worse. (AR 70). Any physical activity like walking, mopping, or

carrying groceries causes shortness of breath and tiredness, and she needs to sit down throughout the day to rest. (AR 66–67). Plaintiff has asthma attacks daily, sometimes several times a day. (AR 68). The pain in her hands and thumbs is severe and keeps her awake at night, and she gets cramping in her hands throughout the day and night. (AR 71). She wears thumb braces on both hands at night. Dr. Siegel recommended surgery but she uses her hands a lot and is worried about something going wrong. (AR 72). Plaintiff also has arthritis in her left knee and has difficulty standing in one place because of pain. (AR 72). Her knee problems depend on how much she uses them; since she is not working, she tries to keep herself comfortable, limiting standing and walking and taking breaks, so a lot of times she doesn't have real strong pain. (AR 78). She takes one Tramadol in the morning, which helps her knees and back but not her hands and thumbs. (AR 79–80).

In an average day, Plaintiff has 3–4 productive hours where she can be up doing laundry, cooking, or cleaning, but she rests after 1 to 1.5 hours of activity. (AR 73–74). On a bad day she would be sitting down for most of the day. (AR 74). She tries to be physically active but cannot do aerobic exercise. (AR 74). Exercise is just walking and moving in the house. (AR 79). She can sit for about an hour and stand for 40–45 minutes. (AR 75). She can squat, bend, or stoop a few times but it's problematic with her back and knee and if she were packing to move it would be treacherous. (AR 75). Plaintiff used to be a horse person, camp, and hunt but doesn't do that much now, and can't paint because it hurts and she doesn't have dexterity. (AR 76). She can work on the computer for an hour and then she gets pain and pinching. (AR 77). Plaintiff disagreed with Dr. Major's assessment that she could work part-time. (AR 77).

D.    Vocational Testimony

At the hearing before the ALJ, Connie Guillory testified as a vocational expert. She classified Plaintiff's past work as follows: transitional care coordinator, light and skilled; public relations representative, sedentary and skilled, but Plaintiff performed it at the light level; utilization review coordinator, light and skilled; and retail sales clerk, light and skilled. (AR 83).

The ALJ asked Guillory to assume an individual with Plaintiff's education and work experience who could perform light work with the following limitations: stand and walk 6 out of 8 hours; sit 6 out of 8 hours; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, and stoop; occasionally crouch, kneel, and crawl; handling and fingering can be performed frequently, bilaterally, and the work should avoid constant usage in gripping; and work should avoid concentrated exposure to fumes, chemicals, extremes in temperature, and work hazards such as unprotected heights and moving machinery. (AR 84). Guillory testified such a person could perform all of Plaintiff's past jobs.

For the second hypothetical the ALJ reduced the handling and fingering and usage in gripping to occasional, bilaterally. (AR 84–85). Guillory testified such a person could not perform any of Plaintiff's past jobs and that there would be no transferrable skills. (AR 85).

Guillory stated that the highest amount of time an employer would tolerate someone being off task per day was 10 percent, and the highest amount of absenteeism would be one day per month. (AR 85–86).

On questioning by Plaintiff's attorney, Guillory stated that if Plaintiff were limited to Dr. Major's recommendation for only part-time sedentary work, 6 hours per day and 4 days per week, she could not do her past jobs because they were all full-time. (AR 88). If the functional limitations assessed by Dr. Major were included, Plaintiff would not be able to perform full-time work in the national economy. Further, if Plaintiff had to miss 4 days per month due to disability and illness and if she had to rest and was off-task 10 percent of the day or more, that would eliminate competitive employment. (AR 88–89).

E.      ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of chronic obstructive pulmonary disorder ("COPD") and osteoarthritis. (AR 16).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other

evidence of record. (AR 18). The ALJ specifically found that Plaintiff's statements were inconsistent because there were gaps in treatment apparently due to family commitments. (AR 18). The ALJ further noted that conditions of a long-term nature did not appear to have significantly worsened during the period at issue, that Plaintiff took limited medications by choice, that there were persistent reports of ongoing exercise, and that Plaintiff testified she earned an associate degree during the period at issue. (AR 18–19).

The ALJ gave partial weight to treating physician Dr. Major's opinion because it was not fully supported by the record as a whole or by his contemporaneous treatment notes, and because there were significant gaps in treatment. (AR 21–22).

The ALJ gave great weight to the non-examining state agency physician opinions because their findings were consistent with the evidence available at hearing level. (AR 23).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: stand and walk 6 out of 8 hours; sit for 6 hours; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, and stoop; occasionally crouch, kneel, and crawl; handling and fingering can be performed frequently, bilaterally, and the work should avoid constant usage and gripping; and work should avoid concentrated exposure to fumes, chemicals, extremes in temperature, and hazards such as unprotected heights and moving machinery. (AR 17). The ALJ determined that Plaintiff could perform her PRW as a coordinator of rehabilitation services, public relations director, retail sales clerk, and utilization review coordinator as generally performed. (AR 23–24). The ALJ therefore concluded that Plaintiff was not disabled. (AR 24).

## III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC

precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Here, Plaintiff was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility,

and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id*. (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Discussion

Plaintiff argues that substantial evidence does not support the ALJ's finding that she performed her past relevant work at the sedentary level. Plaintiff further argues that the ALJ erred in weighing treating physician Dr. Major's opinion. Plaintiff requests that the Court remand this matter for an award of benefits because she is clearly disabled at Step Five of the sequential evaluation, or alternatively, remand this matter for rehearing to reevaluate Dr. Major's opinion.

The Commissioner argues that the ALJ's Step Four finding is supported by substantial evidence and that the ALJ reasonably analyzed Dr. Major's opinion. The Commissioner further states that even if the ALJ did err, remand for an award of benefits would be inappropriate because the ALJ did not make an alternate finding at Step Five.

The Court finds that the ALJ failed to provide legally sufficient reasons to discount Dr. Major's opinion. This error impacted the ALJ's RFC assessment and the hypotheticals posed to the VE, as well as the ALJ's evaluation of Plaintiff's subjective symptom testimony. Consequently, the error was not harmless because it ultimately impacted the ALJ's Step Four nondisability finding. Because questions remain regarding whether in fact Plaintiff was disabled within the meaning of the SSA during the relevant time period, the Court finds that remand for further administrative proceedings is appropriate.[3]

A. Law

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "Courts afford the medical opinions of treating physicians superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

Where a treating physician's opinion is not contradicted by another physician, it

_____

[3] Because the Court will remand this matter for further administrative proceedings on an open record, the Court declines to address the other issues raised by Plaintiff in her appeal.

may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

B. Analysis

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject Dr. Major's opinion that she could stand 3 hours total and walk 3 hours total, that she could not perform full-time work, and that she had limitations on her ability to handle and finger.

The ALJ gave partial weight to Dr. Major's opinion because it was not fully

supported by the record as a whole or by his contemporaneous treatment notes.[4] (AR 21–22). The Court finds that this was not a legally sufficient reason to discount Dr. Major's opinion. First, the ALJ failed to cite to any specific record that contradicted Dr. Major's opinion, and the Court cannot meaningfully review the ALJ's reasoning with such a broad statement. While the Commissioner is not required to "discuss *all* evidence[,]" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted).

Second, while the ALJ highlighted several of Dr. Major's treatment notes indicating normal findings, he also documented that Plaintiff had chronic pain and used Tramadol daily, and the record reflects that while at times Plaintiff had improvements in her conditions and functioning, she also consistently reported problems with pain and difficulty breathing throughout the relevant period. While "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider," *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014), the ALJ may not manufacture a conflict by cherry-picking the evidence to support a finding of non-disability. *See Garrison*, 759 F.3d at 1014 (ALJ manufactured a conflict by identifying a few reports of improvement and then asserting, without reference to any other treatment records, that provider's opinion merited little weight). And, "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017.

The ALJ also stated that there were significant gaps in treatment. (AR 22). While there were several gaps in Plaintiff's treatment by Dr. Major, Dr. Major's notes indicate that this was because Plaintiff had been busy caring for her husband, who was ill with

---

[4] The ALJ did not specify which portion(s) of the opinion she disagreed with, but she did not incorporate many of the limitations Dr. Major assessed into the RFC.

cancer,[5] and because she spent much of her time living in the White Mountains, which made access to medical care intermittent. (AR 43, 364). The ALJ "'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment'. . ." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoti*ng* SSR 96–7p at 7–8). And, despite the gaps in treatment, Dr. Major has a long-term history as Plaintiff's primary care physician— Plaintiff testified at the hearing before the ALJ that Dr. Major has been her treating physician for 11 years. (AR 65).

The ALJ's weight finding ignores Plaintiff's longstanding treatment relationship with Dr. Major in favor of the state agency physicians who never even saw Plaintiff. *See* 20 C.F.R. § 404.1527(c). If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must evaluate any medical opinion according to the requirements set out in 20 C.F.R. § 404.1527(c). Thus, in determining what weight to afford Dr. Major's opinion, the ALJ was required to consider (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of Dr. Major's opinion; (3) the consistency of the opinion and the record as a whole; (4) whether Dr. Major is a specialist; and (5) other factors that would support or contradict Major's opinion. "Generally, the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). While the medical record is not extensive in this case, Dr. Major is certainly in a better position to evaluate Plaintiff's conditions and functional limitations than the state agency reviewing physicians who never examined nor treated Plaintiff. *See Potter*, 2015 WL 1966715 at *13; *Garrison*, 759 F.3d at 1012.

In sum, the Court finds that the ALJ erred by failing to set forth clear and convincing

---

[5] Dr. Chacko similarly noted he had not seen Plaintiff in 2 ½ years because she was caring for her husband with cancer. (AR 432).

or specific and legitimate reasons supported by substantial evidence to assign partial weight to Dr. Major's opinion. Further, the ALJ failed to address the factors set out in 20 C.F.R. § 404.1527(c), particularly the frequency of examination and the length, nature, and extent of the treatment relationship, and the evidence in support of Dr. Major's opinion. This error is not harmless because it affected the ALJ's RFC assessment and the ultimate nondisability finding at Step Four. *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) ("a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Accordingly, the Court finds that this matter should be remanded for further administrative proceedings to reassess Dr. Major's opinion and continue the five-step sequential evaluation process.

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brow-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds remand for further administrative proceedings is appropriate. The ALJ erred by failing to set forth legally sufficient reasons to assign only partial weight to Dr. Major's treating physician opinion. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. However, although Plaintiff's conditions may be considered severe, this Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC

and subjective symptom testimony are best reassessed in consideration of the entire record, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. Additionally, the ALJ is required to consider all of Plaintiff's alleged impairments, whether severe or not, in the assessment on remand. SSR 86–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'").

"Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1142. The Court expresses no view as to the appropriate result on remand.

## VI. Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits. The Clerk of Court shall enter judgment accordingly and close its file on this matter.

Dated this 9th day of September, 2019.

Eric J. Markovich
United States Magistrate Judge